# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FREDERICK K. SHORT, JR., TAMATHA COSTELLO, and EDITH MALDONADO, | : | Document Electronically Filed |
| Plaintiffs, | : : : | Civil Action |
| v. | : : | No. 1:23-cv-21105 (ESK-EAP) |
| NEW JERSEY DEPARTMENT OF EDUCATION, ACTING COMMISSIONER ANGELICA ALLEN-MCMILLAN, CHERRY HILL BOARD OF EDUCATION, CHERRY HILL SCHOOL DISTRICT, CRANFORD PUBLIC SCHOOL DISTRICT, and CRANFORD BOARD OF EDUCATION, | : : : : : : : : | Return Date: June 3, 2024 |
| Defendants. | : | |

### REPLY BRIEF IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS
_____

                       MATTHEW J. PLATKIN
                       ATTORNEY GENERAL OF NEW JERSEY
                       Attorney for State Defendants
                       R.J. Hughes Justice Complex
                       25 Market Street, P.O. Box 112
                       Trenton, New Jersey 08625-0112
                       P: (609) 376-3100
                       F: (609) 943-5853

Jeremy Feigenbaum
Solicitor General
Liza Fleming
Special Assistant to the Solicitor General
  Of Counsel and on the Brief

Matthew Lynch
Justine Longa
Meghan Musso
Deputy Attorneys General
  On the Brief

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .................................................................................................................2

I. MALDONADO LACKS STANDING TO PURSUE THESE CLAIMS AGAINST THE STATE DEFENDANTS. ........................................................2

   A. Maldonado Has Not Properly Identified An Article III Injury. .......................2

   B. Maldonado Has Not Shown Article III Traceability Or Redressability Against The State Defendants. ..........................................................................................5

II. MALDONADO'S CONSTITUTIONAL CLAIMS ALSO WARRANT DISMISSAL UNDER RULE 12(B)(6). ...............................................................8

   A. The Guidance Does Not Infringe Maldonado's Constitutional Rights. ...........9

   B. The Guidance Advances Powerful State Interests. ........................................13

III. SOVEREIGN IMMUNITY BARS ALL CLAIMS AGAINST THE DEPARTMENT OF EDUCATION AND ALL STATE LAW CLAIMS AGAINST ANY STATE DEFENDANT. .........................................................14

CONCLUSION ............................................................................................................15

# **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                                          Page(s)

*Bruni v. City of Pitt.*,
    941 F.3d 73 (3d Cir. 2019) .............................................................................. 13

*California v. Texas*, 593 U.S. 659 (2021) ............................................................. 5, 6

*Child.'s Health Def., Inc. v. Rutgers*,
    93 F.4th 66 (3d Cir. 2024) ......................................................................... 13, 11

*Combs v. Homer-Center Sch. Dist.*,
    540 F.3d 231 (3d Cir. 2008) ............................................................................ 13

*Doe v. Boyertown Area Sch. Dist.*,
    897 F.3d 518 (3d Cir. 2018) ................................................................... 13-14, 14

*Downey v. Pa. Dep't of Corr.*,
    968 F.3d 299 (3d Cir. 2020) ............................................................................ 10

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*,
    78 F.4th 622 (4th Cir. 2023) ........................................................................... 2-3

*Koslow v. Pennsylvania*,
    302 F.3d 161 (3d Cir. 2002) ............................................................................ 14

*Mack v. Loretto*,
    839 F.3d 286 (3d Cir. 2016) ............................................................................ 12

*Mozert v. Hawkins Cnty. Bd. of Educ.*,
    827 F.2d 1058 (6th Cir. 1987) ........................................................................... 5

*Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*,
    80 F.4th 215 (3d Cir. 2023) ........................................................................ 1, 2, 5

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
    366 F.3d 930 (D.C. Cir. 2004) .................................................................. 5-6, 6, 7

*Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist.*,
    95 F.4th 501 (7th Cir. 2024) ............................................................................. 3

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) .................................................................................. 15, 14

*Raygor v. Regents of the Univ. of Minn.*,
   534 U.S. 533 (2002) ................................................................................... 15

*Renal Physicians Ass'n v. U.S. HHS*,
   489 F.3d 1267 (D.C. Cir. 2007) .................................................................... 6

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
   393 U.S. 503 (1969) .............................................................................. 12-13

**State Cases**

*Betts v. Nichols*,
   No. A-1378-21, 2023 WL 3990568 (N.J. Super. Ct. App. Div. June 9, 2023) ... 8

*Doe v. N.J. Dep't of Corr.*,
   Docket No. A-5101-18T1, 2020 WL 2892395 (N.J. Super. Ct. June 3, 2020) ... 8

*Enriquez v. W. Jersey Health Sys.*,
   777 A.2d 365 (N.J. Super. Ct. 2001) ............................................................ 8

*Raygor v. Univ. of Minn.*,
   604 N.W.2d 128 (Minn. Ct. App. 2000) ..................................................... 15

*Sacklow v. Betts*,
   163 A.3d 367 (N.J. Super. Ct. 2017) ............................................................ 8

**State Statutes**

N.J. Stat. Ann. § 10:5-12(f) ............................................................................ 7-8

N.J. Stat. Ann. § 18A:1-1 ............................................................................ 10, 11

N.J. Stat. Ann. § 18A:36-41(a) .......................................................................... 13

N.J. Stat. Ann. § 18A:37-15 ................................................................................ 4

**Other**

N.J. Admin. Code § 6A:16-7.7 ............................................................................ 4

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 2

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1

**PRELIMINARY STATEMENT**

Maldonado's case rests on a misunderstanding. Contrary to her legal claims, the "Transgender Student Guidance For School Districts" does not require her and her children to "honor," "recognize," and "accept" a view of gender identity contrary to their personal or religious beliefs. Her complaint must therefore be dismissed for lack of Article III standing and for failure to state a claim.

To begin, Maldonado fails to overcome the Article III defects in her pleadings. Rather, Maldonado mistakenly argues that the language of the State's Guidance and the school district policy "compels" her and her children to "accept a belief presented by the State" or "face discipline for violation of school policy." Opp. at 12-13. But because Maldonado's theory misreads the Guidance, and she has failed to allege any facts suggesting that any defendants have or imminently will engage in conduct that would draw a "credible" and "substantial" threat of governmental enforcement, she lacks an Article III injury. *See Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, 80 F.4th 215, 219-20 (3d Cir. 2023) (*NSSF*). And Maldonado also offers no response to the precedents establishing that a challenge to the non-binding Guidance cannot satisfy Article III's traceability or redressability requirements for standing.

Maldonado's constitutional claims also require dismissal under Rule 12(b)(6). Each claim again rests on Maldonado's misunderstanding that the Guidance requires her and her children to "honor," "recognize," and "accept" a view of gender identity

contrary to their personal or religious beliefs—a claim inconsistent with the text of the Guidance, and otherwise unsupported by any plausible allegations. In any event, the policies the Guidance actually proposes advance compelling state interests in a tailored way. Finally, her claims against the Department of Education and her state-law claims against all State Defendants are barred by sovereign immunity. For these reasons, her claims should be dismissed with prejudice.

## ARGUMENT

### I. MALDONADO LACKS STANDING TO PURSUE THESE CLAIMS AGAINST THE STATE DEFENDANTS.

Maldonado's opposition brief fails to remedy either of the two fatal defects to her standing. First, she cannot overcome her failure to allege Article III injury against any defendant. Second, she does not explain how any such injury is traceable to the non-binding Guidance or redressable by an injunction against the State Defendants. Because these claims fail to satisfy Article III, her complaint should be dismissed.

#### A. Maldonado Has Not Properly Identified An Article III Injury.

Maldonado's claim that she has suffered an Article III injury because both the Guidance and the school district's policy "compel[]" her and her children to "accept a belief presented by the State" or "face discipline," Opp. at 12-13, misstates the challenged policies and therefore fails to satisfy Rule 12(b)(1). Notably, Maldonado has no response to the cases on which the State Defendants relied, including *NSSF*, 80 F.4th 215; *John & Jane Parents 1 v. Montgomery County Board of Education*,

2

78 F.4th 622 (4th Cir. 2023), *cert. denied*, __ S.Ct. __, 2024 WL 2262333 (U.S. May 20, 2024); and *Parents Protecting Our Children, UA v. Eau Claire Area School District*, 95 F.4th 501 (7th Cir. 2024). They are fatal to her standing.

As the State Defendants already explained, *see* Br. 12-15, the Seventh Circuit recently held parents lacked standing to challenge a similar school guidance because "conviction and concern" about the policy, no matter how strongly held, is not "an actual or imminent injury" under Article III. *Parents Protecting Our Child.*, 95 F.4th at 505. Although those plaintiffs were concerned that those policies could one day be implemented in ways that infringe their rights—an allegation that "invite[d]" the court "to look beyond the language of the [policy] to risks that the [challengers] envision[] and worr[y] may accompany its implementation"—the plaintiffs had not pled any "concrete facts about [the policy's] implementation" to plausibly allege that implementation was causing, or would cause, such injuries. *Id.* at 505-06. The court thus found that the plaintiffs' "expressions of worry and concern" failed to establish any "actual injury or … any imminent harm attributable to" the policy. *Id.*

Maldonado fails to explain why the same deficiency does not foreclose these claims. Maldonado argues that the language of the State's Guidance and the school district's policy "compels" her and her children to "accept a belief presented by the State" or "face discipline for violation of school policy." Opp. at 12-13. But as in *Parents Protecting*, even a cursory review of the Guidance and the school district's

3

policy shows that nothing in their language dictates what views parents or students must hold or express on gender. The Guidance and the district's policy provide only that the "school district shall accept a student's asserted gender identity" and that the "school district shall honor and recognize a student's asserted gender identity." ECF No. 45-3 at 2, 4 (State Guidance); ECF No. 1-10 at 21, 23 (Cherry Hill Policy). They are not only silent on what views *parents* may hold on this question, but explicitly contemplate that at times parents may express a view that is inconsistent with the district's approach. *See* ECF Nos. 45-3 at 3; 1-10 at 21. And where such a conflict arises between a student and parent, they recommend not that the school impose a view on the parent, but instead provide "resources" to parents and students alike that could aid in such situations. *Id.* Nor do the Guidance or the district's policy say anything about students' views regarding questions of gender; they only acknowledge the district's pre-existing legal obligation to prohibit and prevent *harassment, intimidation, or bullying* motivated by gender identity or for any other reason. *See* ECF Nos. 45-3 at 5; 1-10 at 22 (citing N.J. Stat. Ann. § 18A:37-15; N.J. Admin. Code § 6A:16-7.7). Maldonado at no time suggests she or her children have a right to engage in such conduct against another student.

Nor does Maldonado allege any facts suggesting any of the defendants will require her or her children to hold or express views on gender-related questions contrary to their religion, let alone imminently, nor that a defendant will coerce them

4

or punish them for holding or expressing contrary views. Maldonado neither cites nor alleges specific conduct in which she or her children wish to imminently engage that is "arguably forbidden by" the Guidance or Policy, let alone conduct that would draw "credible" and "substantial" threat of governmental enforcement. *NSSF*, 80 F.4th at 219-20. Article III does not allow such speculative claims.

Maldonado's reliance on *Mozert v. Hawkins County Board of Education*, 827 F.2d 1058 (6th Cir. 1987), does not help her. Setting aside that *Mozert* did not even involve a question of Article III standing, the court there merely distinguished those cases in which a person was compelled "to affirm or disavow a belief forbidden or required by one's religion" from school curricula requiring students be exposed to certain materials containing ideas that parents found objectionable, and held that the latter did not violate the free exercise of religion. 827 F.2d at 1066. Like in *Mozert*, absent a specific provision of the Guidance or allegations to show imminent and substantial risk that Maldonado or her children actually need to "affirm Defendants' definition of gender," ECF No. 44 ¶ 47, dismissal is required.

### B. Maldonado Has Not Shown Article III Traceability Or Redressability Against The State Defendants.

Even assuming Maldonado suffered an Article III injury, she cannot show that any alleged injury is traceable to the Guidance or redressable by a court order against the State Defendants. Maldonado again offers no response to the cases—*California v. Texas*, 593 U.S. 659 (2021); *National Wrestling Coaches Ass'n v. Department of*

5

*Education*, 366 F.3d 930 (D.C. Cir. 2004); and *Renal Physicians Ass'n v. U.S. Department of Health & Human Services*, 489 F.3d 1267 (D.C. Cir. 2007)—which establish that a challenge to a non-binding or non-enforceable policy cannot satisfy traceability or redressability. That is dispositive.

Maldonado's arguments, Opp. at 14, ignore this fundamental distinction. On the traceability requirement, her argument runs like this: (1) the school district's own policy is enforceable, (2) that district policy injures Maldonado and her children, (3) the district policy was adopted "verbatim" from the Guidance, so (4) Maldonado's injury must be traceable to the underlying State Guidance. But that logic is contrary to settled law. As the State Defendants explained in their moving brief (at 17), where a challenged policy—here, the Guidance—is not itself enforceable, it necessarily is not the cause of a legal injury. That is, to establish traceability as to a specific policy, a plaintiff must "assert an injury that is the result of [the policy's] actual or threatened *enforcement*, whether today or in the future." *California v. Texas*, 593 U.S. at 670. Maldonado has alleged no facts to establish that her claimed injury from language in the Policy is a result of the *Guidance's* threatened enforcement. Indeed, even though she alleges that the school district's policy adopted the Guidance's language verbatim, case law makes clear that the "independent decisions" of third parties to follow a government's own non-binding guidance document is legally insufficient for traceability. *See, e.g.*, *Nat'l Wrestling*, 366 F.3d at 936-37; *Renal Physicians*, 489

6

F.3d at 1274. Maldonado fails to cite any precedent for her traceability argument—much less any precedent involving non-binding policies.

Even if Maldonado's injury could be traced to the unenforceable Guidance, her opposition brief does not explain how her requested relief—an order declaring the Guidance unconstitutional—would redress her injury. Opp. at 14-15. Once again, *National Wrestling*—involving a challenge to a nonbinding Title IX guidance from the U.S. Department of Education—is instructive. While those plaintiffs also argued that they were harmed by school policies that had relied on the terms proposed by the guidance, the D.C. Circuit determined that claim insufficient because the schools legally *could* have chosen to take the same steps to comply with Title IX *absent* the guidance. *Nat'l Wrestling*, 366 F.3d at 939-40. So too here. Even if this Guidance did not exist, the district could still adopt the same policy to ensure the district's compliance with laws like the LAD. An order declaring the Guidance unlawful and enjoining its enforcement thus would not redress Maldonado's alleged injury because it would not prevent the school district from maintaining the same policy as a matter of law.

Finally, Maldonado's claim that the school policy is not also compelled by the LAD because only diagnosed "gender dysphoria" is protected, Opp. at 15, is contrary to the express language of the LAD. Since 2006, the Legislature has made clear the LAD bars discrimination on the basis of "gender identity or expression." N.J. Stat.

7

Ann. § 10:5-12(f); N.J. Pub. L. 2006, c. 100. The sole decision Maldonado cites, *Enriquez v. West Jersey Health Systems*, 777 A.2d 365 (N.J. Super. Ct. App. Div. 2001), was decided *before* the LAD was amended in 2006 to include gender identity and expression as protected characteristics. And so the portion of *Enriquez* on which Maldonado relies dealt only with whether gender dysphoria falls under the protected category of "handicap," which is irrelevant to Maldonado's claim. 777 A.2d at 373-75. In any event, *Enriquez* held the protected category of "sex" included gender identity for purposes of a LAD discrimination claim. *Id.* at 373-74. *Enriquez* is thus entirely inapposite.[1] The LAD bars schools from discriminating against transgender students no matter whether they have been diagnosed with or treated for "gender dysphoria." Maldonado has failed to show that her alleged injury is traceable to the Guidance or that a court order against the State Defendants would redress it.

## II. MALDONADO'S CONSTITUTIONAL CLAIMS ALSO WARRANT DISMISSAL UNDER RULE 12(B)(6).

If this Court reaches the merits, it should dismiss Maldonado's constitutional claims. First, Maldonado's claims rest on the same mistaken belief that the Guidance requires her and her children to affirm a view of gender identity contrary to their

---

[1] Maldonado's other cited cases—*Sacklow v. Betts*, 163 A.3d 367 (N.J. Super. Ct. Ch. Div. 2017); *Betts v. Nichols*, No. A-1378-21, 2023 WL 3990568 (N.J. Super. Ct. App. Div. June 9, 2023); and *Doe v. N.J. Dep't of Corr.*, No. A-5101-18T1, 2020 WL 2892395 (N.J. Super. Ct. App. Div. June 3, 2020)—are also inapposite. Opp. at 15. None of these cases addresses gender identity under the LAD or require medical diagnosis of gender dysphoria for a person to be considered transgender.

personal or religious beliefs. But the Guidance does no such thing. And Maldonado fails to plead facts to plausibly allege that the Guidance violates her or her children's constitutional rights. Second, the Guidance withstands any level of scrutiny.

    A.    <u>The Guidance Does Not Infringe Maldonado's Constitutional Rights.</u>

Maldonado's opposition brief fails to rehabilitate her claims that the Guidance violates her right to equal protection, free speech, or free exercise.

1. Maldonado's argument that the Guidance violates her constitutional rights because it requires her and her children to "'honor,' 'recognize,' and 'accept' the State's definition of gender," Opp. at 21, 26, is flatly inconsistent with the very policies she cites. No provision of the Guidance "demands that all students 'accept', 'honor,' and 'recognize' ... that gender is fluid and determined by feelings," or deems any particular belief or viewpoint a violation of the Guidance. *Id.* at 10-11. Instead, as discussed *supra* at 4, the Guidance provides that "[a] school district shall accept a student's asserted gender identity; parental consent is not required," ECF No. 45-3 at 2, and that the "school district[] shall honor and recognize a student's asserted gender identity, and shall not require any documentation or evidence in any form, including diagnosis, treatment, or legal name change," *id.* at 4. And the Guidance acknowledges parents or guardians may "disagree[]" with or "object" to a student's gender identity, *id.* at 3, and "students, parents, or other community members [may] raise objections or concerns," *id.* at 4. The Guidance thus makes recommendations

directed to *school districts* on how to ensure a supportive and safe environment for students; it leaves parents and students free to hold and express their own personal views about biological sex and gender identity, including any religious beliefs.

While Maldonado's constitutional claims rest on her argument that "students and parents" are encompassed within the meaning of the term "school district" as used in the Guidance, that is legally erroneous. Most obviously, "school district" is commonly understood to mean "a unit for administration of a public-school system often comprising several towns within a state." *School District*, Merriam-Webster Dictionary, https://tinyurl.com/2wy3wwvk (last visited May 28, 2024); *see Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 306 (3d Cir. 2020) (instructing that, interpreting a policy is "essentially a matter of statutory construction" and directing that courts should "look to dictionary definitions to determine the ordinary meaning of a word" (citations omitted)); N.J. Stat. Ann. § 18A:1-1 (defining "Local school district" as "any school district comprising within its territorial boundaries the territory comprised in one or more municipalities, except a regional school district"). A "school district" is thus a "unit for administration" of a school system, not a term that sweeps in parents or students. Maldonado cites no legal authority to establish otherwise.

Moreover, even setting aside that Maldonado cites nothing in the Guidance or case law to support this theory, Opp. at 8-9, 19, 21, 23, interpreting "school districts"

10

to encompass "students and parents" would lead to absurd results. To accept such an interpretation—where use of "school districts" sweeps in "students and parents"—would mean the Guidance is somehow directing *students and parents* to "develop policies and procedures to ensure that its schools provide a safe and supportive learning environment that is free from discrimination and harassment for transgender students," ECF No. 45-3 at 3; "consult [a] board attorney," *id.*; have discussions with a transgender student regarding "risks associated with the student's transgender status being inadvertently disclosed," *id.*; "review and update their existing policies and procedures," *id.* at 3-4; "provide staff training," *id.* at 4; "ensure that school counselors are knowledgeable," *id.*; "create an appropriate confidentiality plan," *id.*; "report to the New Jersey Department of Education through NJ SMART a student's name or gender," *id.* at 6; and "maintain locally a separate record reflecting the student's legal name," *id.* Maldonado offers no support for this view. Because the Guidance's plain text does not require students or parents to adopt a particular view of gender identity, the theory on which Maldonado bases each of her constitutional claims fails.

2. Aside from Maldonado's misreading of the Guidance, her claims also fail because she offers only "conclusory assertions" to support them. *Child.'s Health Def., Inc. v. Rutgers*, 93 F.4th 66, 84 (3d Cir. 2024).

11

As to equal protection, Maldonado argues the Guidance "provides different constitutional protections to similarly situated students," Opp. at 22, but fails to explain how transgender students and students with religious beliefs are "alike in all relevant respects," or point to any specific instances where she or her children were treated differently than a transgender student, much less that such treatment was "the result of intentional discrimination based on [religious beliefs]." *Mack v. Loretto*, 839 F.3d 286, 305 (3d Cir. 2016); ECF No. 44 ¶¶ 12-35. Maldonado's failure to plead facts to show that she or her children has been or will be subject to differential treatment than similarly situated persons, let alone because of their personal beliefs, is independently fatal to her equal protection claim.

And as for Maldonado's free speech and free exercise claims, Opp. at 16-22, Maldonado's opposition brief fails to point to any factual allegations to establish that she or her children were prevented from expressing their religious beliefs regarding gender, that they were forced to make particular statements regarding gender identity because of the Guidance, or that any action would or even could be taken against her or her children under the Guidance for their religious beliefs. ECF No. 44 ¶¶ 12-20, 36-49. And while Maldonado claims that the Guidance is content based because the Guidance "restricts expression based on its message, ideas, and content," Opp. at 19, Maldonado has not identified statements she or her children want to make that the Guidance would in any way prevent. Maldonado's reliance on *Tinker v. Des Moines*

12

*Independent Community School District*, 393 U.S. 503 (1969), Opp. at 23-24, is misplaced for the same reason: its discussion of school disruption has no relevance when Maldonado has failed to plead any facts to establish that the Guidance targets speech at all. Because the Guidance does not mandate parents' or students' speech or beliefs, it cannot infringe Maldonado's asserted constitutional rights.

B.  The Guidance Advances Powerful State Interests.

As the State explained in its moving brief (at 29-34), although the Guidance does not classify based on protected traits, or discriminate on viewpoint, content, or religion, it still satisfies any standard of review.[2] Maldonado's argument fails for the same reason that she cannot establish that the Guidance infringes any of her rights—she again wrongly claims that the Guidance requires her and her children to "'honor,' 'recognize,' and 'accept' the State's definition of gender." Opp. at 23-27.

Stripped of that misunderstanding, Maldonado cannot dispute that the State has a compelling interest in helping schools "establish[] policies and procedures that ensure a supportive and nondiscriminatory environment for transgender students." N.J. Stat. Ann. § 18A:36-41(a); *see also Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 529 (3d Cir. 2018) (recognizing that schools have a "compelling state interest

---

[2] Maldonado does not dispute that absent classifications based on protected traits, or discrimination based on viewpoint, content, or religion, rational basis or intermediate scrutiny applies. *See Child.'s Health Def., Inc.*, 93 F.4th at 84; *Bruni v. City of Pittsburgh*, 941 F.3d 73, 83-84 (3d Cir. 2019); *Combs v. Homer-Ctr. Sch. Dist.*, 540 F.3d 231, 241-43 (3d Cir. 2008).

13

in protecting transgender students from discrimination"). Instead, she characterizes the Guidance as protecting against mere "[o]ffense," Opp. at 26, trivializing the real and significant harm at issue. As the Third Circuit has found, "[m]istreatment of transgender students can exacerbate gender dysphoria, lead to negative educational outcomes, and precipitate self-injurious behavior. When transgender students face discrimination in schools, the risk to their wellbeing cannot be overstated—indeed, it can be life threatening." *Doe*, 897 F.3d at 528-29. Maldonado's unsupported arguments that the Guidance fails strict scrutiny do not overcome the State's detailed showing to the contrary.

### III. SOVEREIGN IMMUNITY BARS ALL CLAIMS AGAINST THE DEPARTMENT OF EDUCATION AND ALL STATE LAW CLAIMS AGAINST ANY STATE DEFENDANT.

Maldonado's arguments do not overcome State Defendants' immunity. As to the Department, while Maldonado claims the Eleventh Amendment does not bar her claims against the State Defendants because she "is seeking prospective relief ... from ongoing violations of federal law" under *Ex Parte Young*, Opp. at 27, that rule applies to federal claims against state officials sued in their official capacities—*not* to claims against states or state agencies. *See Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002). The Department is therefore entirely immune from suit under the Eleventh Amendment, no matter the form of relief Maldonado seeks. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-02 (1984).

As the State Defendants also explained (at 35-36), Maldonado's remaining state-law challenges against State Defendant officials are foreclosed by sovereign immunity too. Maldonado relies on *Raygor v. University of Minnesota*, 604 N.W.2d 128 (Minn. Ct. App. 2000), to argue that *Pennhurst* is "outdated law," such that her pendant state-law claims may proceed. Opp. at 27-28. But the U.S. Supreme Court granted certiorari from that very decision and *reversed*, standing by the approach in *Pennhurst* and holding once more that supplemental jurisdiction "does not extend to claims against nonconsenting state defendants." *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541-42 (2002). Thus, Maldonado's remaining state-law claims against the State Defendants are foreclosed by sovereign immunity.

## CONCLUSION

This Court should grant the State Defendants' motion to dismiss.

        Respectfully submitted,

        MATTHEW J. PLATKIN
        ATTORNEY GENERAL OF NEW JERSEY

        By: /s/ Matthew Lynch
            Deputy Attorney General

Dated: May 28, 2024