## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FREDERICK K. SHORT, JR. and TAMATHA COSTELLO,** | **Case No. 23–21105–ESK–EAP** |
| **Plaintiffs,** | |
| **and** | **OPINION** |
| **EDITH MALDONADO** | |
| **Intervenor Plaintiff,** | |
| **v.** | |
| **NEW JERSEY DEPARTMENT OF EDUCATION,** *et al.*, | |
| **Defendants.** | |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on defendants New Jersey Department of Education (Department) and Acting Commissioner Angelica Allen-McMillan's[1] (Moving Defendants) motions to dismiss: (a) the amended complaint (ECF No. 6) of plaintiffs Frederick K. Short Jr. and Tamatha Costello (ECF No. 45); and (b) the intervenor complaint (ECF No. 44) of intervenor plaintiff Edith Maldonado (ECF No. 54).   Short, Costello, and Maldonado have filed oppositions (ECF Nos. 46, 56) to which Moving Defendants have replied (ECF Nos. 51, 68.)   I held a hearing for both motions on June 17, 2024.   (ECF No. 75.)   For the following reasons, the motions will be GRANTED.

---

[1] Allen-McMillan announced her retirement shortly after the filing of the amended complaint.   Statement from Governor Murphy on Acting Department of Education Commissioner Dr. Angelica Allen-McMillan, *State of N.J. – Governor Phil Murphy* (Nov. 27, 2023),   https://www.nj.gov/governor/news/news/562023/approved/20231127a.shtml.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The New Jersey Legislature passed N.J.S.A. 18A:36–41 in 2017, directing the commissioner of the Department to establish guidelines for issues common to the needs of transgender students and to assist schools in fostering supportive, nondiscriminatory environments for transgender students.   (ECF 6 pp. 9, 10.)   The Department issued Transgender Student Guidance for School Districts (Guidance) the following year, encouraging school districts to communicate confidentially with students regarding their gender identities; transgender statuses; and preferred names, pronouns, and levels of parental notice.   (*Id.* pp. 10, 11.)   Districts are further advised to accept students' asserted gender identities without parental consent required.   (*Id.* p. 11.) Acceptance of a student's gender identity is not tied to any requirement that the student receive any diagnosis, undergo any treatment, or legally change their name.   (*Id.*) The Guidance advises school districts to issue documentation such as student-identification cards with the student's chosen name, permit students to dress in accordance with their gender identity, and— if the student has stated a preference for a name other than their birthname— keep student records containing the student's birth name in a separate and confidential file.   (*Id.* pp. 11–13.)   The Guidance does not place an affirmative duty on school districts to notify a student's parent or guardian of their gender identity and cautions against disclosure of information that may reveal a student's transgender status except as permitted by law.   (*Id.* pp. 11, 12.)

The Cherry Hill Board of Education adopted the Guidance into a district policy in 2019.   (*Id.* p. 15.)   The Cranford Board of Education followed suit in 2020.   (*Id.*)[2]

---

[2] The Cherry Hill Board of Education and Cherry Hill Township School District (Cherry Hill Defendants) and Cranford Board of Education and Cranford Public School District (Cranford Defendants) are also named as defendants in the amended complaint.   (ECF No. 6 p. 8.)   They each filed answers (ECF Nos. 16, 23) prior to filing

Short resides in Camden County with this wife and three children—all of whom attend Cherry Hill High School West within Cherry Hill Township School District.  (ECF No. 6 pp. 7, 8.)  Short asserts that he has been and will continue to be harmed by Cherry Hill Defendants' policy as he and his children have been forced to participate in the policy and he is being deliberately excluded from conversations about his children's gender identity.  (*Id.* p. 4.)

Costello resides in Cranford and her child attended Cranford Public Schools from kindergarten through seventh grade.  (*Id.* p. 7.)  Costello claims that she has already been harmed by way of her child's change in gender identity without her knowledge or consent. (*Id.* pp. 4, 5.) Cranford Defendants, primarily through a guidance counselor, allegedly had conversations with Costello's child about their gender identity while they were in the seventh grade, leading to mental-health complications and Costello's removal of her child from Cranford Public Schools from eighth grade on.  (*Id.* pp. 8, 9.)

---

motions to dismiss (ECF Nos. 37, 39).  Following reassignment of this case to me, I entered an order administratively terminating Cherry Hill and Cranford Defendants' motions to dismiss as they were each filed after a responsive pleading, contrary to Federal Rule of Civil Procedure 12(b).  (ECF No. 58.)  In response to Cherry Hill and Cranford Defendants' subsequent letters, I ordered that the motions to dismiss remain administratively terminated but acknowledged that motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) could be filed after pleadings had closed.  (ECF No. 64.)  Consistent with my Rules and Preferences, Cranford Defendants filed a pre-motion letter seeking to file a motion for judgment on the pleadings (ECF No. 66) and Cherry Hill Defendants filed a pre-motion letter seeking to file a motion to dismiss the intervenor complaint to be discussed below (ECF No. 65).  Following the hearing for the instant motions, I provided Cherry Hill and Cranford Defendants leave to file dispositive motions consistent with their pre-motion letters.  (ECF No. 74.)  This opinion should not be interpreted as prejudging those motions and I have not reviewed the district-specific policies and related arguments in considering the pending motions.  I acknowledge the potentially distinguishable factual and legal considerations at play with respect to the claims asserted against, and defenses applicable to, Moving Defendants as compared to Cherry Hill and Cranford Defendants and the analysis below should not be relied upon in subsequent motion practice or be interpreted as being applicable to subsequent motions.

Short originally filed this action on October 12, 2023 (ECF No. 1) and, as amended with the inclusion of Costello, they allege that the Guidance promotes deceit and that social transitioning and gender-identity transitioning are psychotherapeutic interventions for which parental notification, consent, and participation are beneficial if not necessary (ECF No. 6 pp. 15, 16). The amended complaint quotes liberally from the affidavit of Dr. Stephen Levine, M.D., clinical professor of psychiatry at Case Western Reserve University School of Medicine, and the amicus brief filed in a separate case[3] by Dr. Erica E. Anderson, Ph.D., a clinical psychologist practicing in Berkeley, California who identifies as transgender—which state the importance of parental involvement and input in the transition process. (*Id.* pp. 16–27.)

The amended complaint asserts three counts. Count 1 alleges violation of Short and Costello's Fourteenth Amendment substantive due process rights to upbring and make healthcare decisions for their children. (*Id.* pp. 28–33.) Short's rights are impinged on a daily basis as the Cherry Hill Defendants' policy promotes confidential conversations between his children and school personnel on issues of grave importance while Costello has already been harmed as her child's gender identity was affirmed without her knowledge, resulting in psychological harm. (*Id.* p. 32.) Count 2 asserts that the Guidance is *ultra vires* and exceeds the authority provided in the enabling statute by keeping student-district communications confidential from parents and providing no affirmative duty to notify parents and guardians. (*Id.* pp. 33–37.) Finally, Count 3 brings a 42 U.S.C. §1983 claim premised on Short and Costello's constitutional harms. (*Id.* pp. 37, 38.) Short and Costello seek, among other relief, a declaration that the Guidance and policies are

---

[3] The amicus brief was filed with the United States Court of Appeals for the Fourth Circuit. (ECF No. 1–8.) The resulting decision, *John and Jane Parents 1 v. Montgomery County Board of Education*, 78 F.4th 622 (4th Cir. 2023), will be discussed in greater detail below.

unconstitutional; injunctions against the Department and Cherry Hill Defendants from continuing to impose the Guidance and applicable policy; an order directing that the Guidance and policies be stricken or, alternatively, amended to require parental notification and consent and exclude students' parents and guardians from confidentiality requirements; and an order requiring Cranford Defendants to reimburse Costello for out-of-district tuition expenses paid and to be paid through high school.   (*Id.* pp. 38–40.)

Maldonado is a resident of Camden County whose two children attend school within Cherry Hill Township School District. (ECF No 44 p.3.) Maldonado filed a motion to intervene in this case on January 24, 2024 (ECF No. 33), which United States Magistrate Judge Douglas E. Arpert (Ret.) granted (ECF No. 43).

Distinguishable from Short and Costello's amended complaint, Maldonado's intervenor complaint is premised on the Guidance and Cherry Hill Defendants' policy's required affirmation that gender identity is fluid and can be determined without a diagnosis and their encroachment on religious freedoms. (ECF No. 44 pp. 6–8.) Count 1 alleges deprivation of equal protection of the law under the Fourteenth Amendments of the United States and New Jersey Constitutions by the Guidance and Cherry Hill Defendants' policy's alleged sacrifice of students' religious beliefs for the sake of preventing discrimination against transgender students and lack of "exceedingly pervasive" justification for unequal treatment of students and parents who hold religious beliefs contrary to the Guidance and policy's definition of gender.   (*Id.* pp. 8–10.)   Count 2 alleges violation of free-speech rights conferred by the First Amendment of the United States and New Jersey Constitutions premised on the Guidance and Cherry Hill Defendants' policy's mandated confidentiality and the burdens placed on parental and student free speech "by demanding that students and parents affirm Defendants' definition of gender and by demanding

that schools support, facilitate, and encourage children who are experiencing gender dysphoria without the notice, participation or support of the child's parents and/or without any confirming medical diagnosis."  (*Id.* pp. 10–12.)

Count 3 asserts that the Guidance and Cherry Hill Defendants' policy violate the Establishment Clause and freedom of religion protected by the First Amendment of the United States and New Jersey Constitutions by compelling affirmation of definitions and views of gender that are repugnant to Maldonado's sincerely held Christian beliefs—favoring a secular view over a religious one and offering no opt-out or exclusion for students whose religious beliefs conflict with the Guidance and policy.  (*Id.* pp. 12–21.)  Finally, Counts 4 and 5 assert claims of failure to provide accommodations to protect religious freedoms under the First Amendment of the United States and New Jersey Constitutions and violation of the New Jersey Law Against Discrimination (NJLAD) for failure to provide accommodations for religious beliefs contrary to the Guidance and Cherry Hill Defendants' policy.  (*Id.* pp. 21–25.)  Maldonado seeks relief including an order declaring that the Guidance and Cherry Hill Defendants' policy are unconstitutional or, alternatively, an order providing parents and students an opt-out from accepting or affirming any definition of gender identity that conflicts with their sincerely held religious beliefs.  (*Id.* p. 26.)  If the Guidance and Cherry Hill Defendants' policy are to remain without an opt-out, Maldonado seeks an order directing that a free and public education be provided through vouchers to be used to attend a private school. (*Id.*)

This case was reassigned to me on March 28, 2024.  (ECF No. 49.)  I directed Short and Costello to show cause why their claims should not be severed for misjoinder under Federal Rule of Civil Procedure 21 and scheduled a conference for June 17, 2024.  (ECF No. 58.)  Short and Costello later responded to the order to show cause to my satisfaction (ECF No. 60) and I

advised the parties to prepare to argue the pending motions during the conference (ECF No. 71).

## II.   STANDARDS

### A.   Motions to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), (6)

Prior to the filing of a responsive pleading, a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction or failure to state a claim upon which relief can be granted.   *See* Fed. R. Civ. P. 12(b)(1), (6).   To survive dismissal under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)), and—accepting the plaintiff's factual assertions, but not legal conclusions, as true—"'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged,'" *id.* at 342 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   Courts further evaluate the sufficiency of a complaint by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

A motion to dismiss pursuant to Rule 12(b)(1) may attack subject-matter jurisdiction facially or factually.   *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).   A factual attack challenges the allegations supporting the assertion of jurisdiction, permits a court to weigh evidence outside of the pleadings, and places a burden of proof on the plaintiff to demonstrate that jurisdiction exists.   *Id.*   A facial attack does not dispute the facts as alleged

and essentially applies the Rule 12(b)(6) standard. *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 221 (D.N.J. 2022).

Dismissal for lack of standing is properly brought under Rule 12(b)(1) "because standing is a jurisdictional matter." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)). "Article III standing requires a plaintiff to demonstrate: '(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief.'" *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022) (quoting *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020)). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Davis*, 824 F.3d at 346 (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).

### III.  DISCUSSION

Moving Defendants' motion briefs, and by extension the parties' contentions in both their papers and at the motion hearing, dedicate significant attention to the issue of standing both generally and against Moving Defendants specifically. I will address these challenges first because an assessment of standing is separate from any evaluation of a claim's merits. *See Falcone v. Dickstein*, 92 F.4th 193, 202 (3d Cir. 2024); *see also Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 372 (D.N.J. 2021) (noting a court's independent obligation to assure itself of standing "[b]ecause standing is a component of jurisdiction"). In so doing, I keep in mind that—by itself—prior injury is insufficient to confer standing for injunctive relief and that

> Standing to seek injunctive relief requires a plaintiff to show (1) "that he is under threat of suffering 'injury in fact' that is concrete and particularized"; (2) "the threat must be actual and imminent, not conjectural or hypothetical";

> (3) "it must be fairly traceable to the challenged action of
> the defendant"; and (4) "it must be likely that a favorable
> judicial decision will prevent or redress the injury."

*Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 825 F.3d 149, 165, 166 (3d Cir. 2016)

(quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

Similarly, the purpose of declaratory relief is "to declare the rights and other legal relations of a party before an injury is established." *Ke v. DiPasquale*, 828 F. App'x 98, 102 (3d Cir. 2020); *see also Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 379 (D.N.J. 2015) ("[A] party requesting a declaratory judgment must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." (quoting *Lattaker v. Rendell*, 269 F. App'x 230, 233 (3d Cir. 2008))).   As a whole, these principles require that when a plaintiff seeks prospective relief via either an injunction or declaratory judgment, "they must show that they are 'likely to suffer future injury.'   The future injury must also be 'imminent,' meaning that it is 'certainly impending' rather than just merely 'possible.'"   *See Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 318 (3d Cir. 2022) (footnote omitted) (quoting *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) and then *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).   Upon review of the complaints and the parties' arguments, I conclude that Short, Costello, and Maldonado each lack standing to assert their claims against Moving Defendants and will therefore grant dismissal.

### A.   <u>Plaintiff Short</u>

The amended complaint alleges that Short has and will continue to be harmed as he and his children are forced to participate in Cherry Hill Defendants' policy and his children may at any time adopt new identities without his knowledge or consent.   (ECF No. 6 p. 4.)   The complaint does not allege that any of Short's children are transgender or questioning their gender,

that they have or are imminently going to engage in conversations with school officials about their gender, or that his children will not otherwise share their gender identities or related questions or feelings with him. Instead, "[n]otwithstanding the current transgender or transitioning" statuses of his children, Short claims that he "will likely have no knowledge—from the school—of a gender identity change in his children. Such lack of knowledge could continue prospectively for an indeterminate time—weeks, months, or even years." (*Id.* p. 32.) In response to Moving Defendants' standing arguments, Short asserts that Cherry Hill's policy—and by extension the Guidance—impacts his ability to control the healthcare of his children and he does not have to wait until he learns of his child's impending or active gender change to satisfy standing. (ECF No. 46 pp. 9–11.) Cherry Hill parents are the objects of government actions that conceal their children's gender statuses, invite students to have confidential conversations with the school district concerning gender and name and pronoun preferences, and violate the fundamental right of parents to direct the healthcare of their children. (*Id.* pp. 11, 12.)

Short's claims as presented provide little reason to distinguish this matter from the Fourth Circuit's persuasive reasoning in *John and Jane Parents 1*. There, the board of education adopted guidelines that permitted schools to develop gender-support plans for students without parental knowledge or consent and authorized the withholding of related information if school officials deemed parents to be unsupportive. *John and Jane Parents 1*, 78 F.4th at 626. Parents challenged the "Parental Preclusion Policy" that permitted development of gender-support plans and withholding of related information from parents. *Id.* at 626, 627. The District of Maryland granted dismissal pursuant to Rule 12(b)(6). *Id.* at 627. After the issue of standing was raised for the first time on appeal, the Fourth Circuit concluded that the parents'

arguments that the Parental Preclusion Policy was in effect, applied to their children, and interfered with their right to raise their children were insufficient to support standing absent a current or certainly impending injury or substantial risk of a future injury.  *Id.* at 629.  The parents did not allege that any of their children had gender support plans or conversations with school officials about their gender or that their children might have been considering a gender transition or have a heightened likelihood of doing so, leaving the parents' claims dependent on speculative fear and an injury too attenuated to confer standing.  *Id.* at 629–31; *see also Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.*, 95 F.4th 501, 505, 506 (7th Cir. 2024) (holding that the association failed to demonstrate that any parent was injured or faced imminent harm attributable to administrative guidance or a gender-support plan).

The reasoning of *John and Jane Parents 1* and similar decisions were recently applied within this Circuit in *Doe v. Pine-Richland School District*, Case No. 24–00051, 2024 WL 2058437 (W.D. Pa. May 7, 2024).  There, the plaintiff-parent sought to enjoin enforcement of a district policy that allegedly interfered with her parental rights.  *Doe*, 2024 WL 2058437, at *1, 2.  The plaintiff specifically challenged provisions that noted that sharing a student's transgender status with parents and guardians may violate privacy laws, advised that a student's transgender status should not be disclosed to parents and guardians without legal requirement or student authorization, and required that district staff work closely with a student before notifying their parent or guardian of their transition to assess the degree of parental or guardian involvement and the student's health and well-being.  *Id.* at *2, 3. The plaintiff supported her concerns about her child's possible transition with allegations that her child viewed TikTok videos relating to gender transitioning and sexuality; socialized with new friends, some of whom identified as

transgender or were undergoing social transitions; and the district rejected her request to be notified of any gender-identity issues involving her child.   *Id.* at *3.

The court concluded that the plaintiff could not satisfy her burden of showing a reasonable likelihood of success on the merits to support her motion for a preliminary injunction because she did not demonstrate an injury-in-fact required for Article III standing.   *Id.* at *4.   The court in synthesizing cases including *John and Jane Parents 1* concluded that "parents must point to something more than the mere concern that a school may apply its transgender policy to their child."   *Id.* at *5–8.   The plaintiff had not alleged that her child identified as transgender, approached the school district about their gender, or was interacted with in any way related to their gender.   *Id.* at *8.   As such the plaintiff had only presented concerns that an injury might occur without the necessary nexus between her child and the policy.   *Id.* at *8, 9.

Short seeks to distinguish himself from the District of Maryland's decision in *John and Jane Parents 1* by asserting that the guidelines there contemplated more parental involvement than the Guidance and that the plaintiffs there did not focus on parents' right to direct their children's healthcare.   (ECF No. 46 pp. 26, 33.)   These arguments require the Court to reach the merits of Short's challenge, which I will not do.   They further ignore that the Fourth Circuit vacated the district court's order and remanded for dismissal without prejudice as there was no standing to hear the dispute.   *John and Jane Parents 1*, 78 F.4th at 636.

Short also compares his standing here with the petitioner in *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701 (2007).   He argues that he is compelled to participate in the Cherry Hill Defendants' policy, derived from the Guidance, that creates an ongoing constitutional injury and that he does not lack standing simply because he "has

not yet [been] empirically prejudiced." (ECF No. 46 pp.14, 15.)    Seattle School District No. 1 adopted a plan for assignment of students to its ten public high schools based on student preference. *Parents Involved*, 551 U.S. at 711. The plan had a tiebreaker for oversubscribed schools based on the racial composition of the school and race of the student, with the goal being to reach a desired ratio of white and nonwhite students. *Id*. at 712.   The petitioner, a nonprofit corporation of parents whose children were or may have been denied assignment to their preferred schools due to race, challenged the plan. *Id*. at 713, 714.   The Supreme Court rejected the school district's standing challenge, concluding that simply because it was possible that children of the petitioner's members might not ultimately be denied admission due to race did not eliminate the claimed injury. *Id*. at 718, 719.   "[B]eing forced to compete in a race-based system" was itself an equal-protection injury that the Supreme Court had previously found parents could raise on their children's behalf. *Id*. at 719.   This is not Short's case.

The petitioner in *Parents Involved* represented multiple parents with multiple children in a school district with just ten high schools, five of which were oversubscribed at the time of suit and three outside the desired ratio. *Id*. at 713, 714.   Upon the school district flipping a proverbial switch and resuming implementation of the plan, which the Court presumed, *see id*. at 719, the petitioner moved down a path toward a sufficiently imminent injury.   There are simply more switches to flip in the present case and I will not presume any one of them.   Short has made no showing that any of his children are transgender or otherwise questioning their gender, any of his children have communicated with school officials about their gender, any disclosure to school officials would not be shared with him for an excepted reason, or any one of his children would not otherwise share their transgender or gender-questioning status with him. *See John and Jane Parents 1*, 78 F.4th at 631 (noting the

chain of events necessary for the parents to sustain an injury "requir[ing] guesswork as to both their children's actions and actions of the … public schools").  As the number of switches increases, Short's injury becomes too speculative to support standing.  *See Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) ("Plaintiffs do not allege an injury-in-fact when they rely on a 'chain of contingencies' or 'mere speculation.'" (quoting *Aichele*, 757 F.3d at 364)); *see also Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 894 (3d Cir. 2020) ("Without announcing where in the logical chain a concrete injury becomes too attenuated, we conclude that Thorne's alleged '"at-risk" … status' is too speculative to support standing." (omission in original) (quoting *Perelman v. Perelman*, 793 F.3d 368, 375 (3d Cir. 2015))); *Kamal v. J. Crew Grp., Inc.*, 416 F. Supp. 3d 357, 360 (D.N.J. 2019) ("Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative." (quoting *Clapper*, 568 U.S. at 409)).

I conclude that the injury pleaded by Short is too speculative to satisfy Article III standing.  I will therefore grant dismissal of his claims against Moving Defendants.

## B.  <u>Plaintiff Costello</u>

At first blush, Costello's claims against Moving Defendants are made on even weaker standing because—as argued by Moving Defendants (ECF No. 45–1 at 26–29)—she has removed her child from Cranford Public Schools and is therefore no longer affected by the Guidance or Cranford Defendants' policy. Indeed, not only has Costello placed her child in an out-of-district school since eighth grade, but she does not appear to intend to place her child back in public school as evidenced by her request for an order seeking future tuition expenses "for the remainder of the child's High School Education."  (ECF No. 6 p.40.) Thus there does not appear to be a risk of future harm to Costello.  *See McNair*,

672 F.3d at 225 ("[W]hile the injuries Appellants allegedly suffered when they were Synapse customers may suffice to confer individual standing for monetary relief, the wholly conjectural future injury Appellants rely on does not, and cannot, satisfy the constitutional requirement that a plaintiff seeking injunctive relief must demonstrate a likelihood of future harm."); *see also Free Speech Coal., Inc.*, 825 F.3d at 165, 166 (concluding that the past searches were insufficient by themselves to confer standing for injunctive relief); *ASAH v. N.J. Dep't of Educ.*, 330 F. Supp. 3d 975, 1005 (D.N.J. 2018) ("[T]hese allegations of past injury under a previous regulatory scheme, standing alone, are insufficient to confer standing on Plaintiffs to seek prospective injunctive and declaratory relief regarding the July 2017 Regulations.").

Costello offers a twist to the standing analysis, however: she has not sought and does not seek injunctive relief but rather satisfies standing by her request for monetary damages being intertwined with her request for a retrospective declaratory judgment.   (ECF No. 46 pp. 15–17.)   This twist only serves to turn the analysis 360 degrees to arrive at the same conclusion: Costello lacks standing to assert her claims against Moving Defendants.

Costello's standing argument relies on the Tenth Circuit's recognition that declaratory relief may be retrospective "to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred."   *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 n.2 (10th Cir. 2002).   In *Rasmussen*, members of the plaintiff were threatened with arrest for protesting outside of a school based on a section of Utah Code later found to be inapplicable to the relevant protest and filed suit for monetary, declaratory, and injunctive relief.   298 F.3d at 1201, 1202.   Despite the footnote relied on by Costello, the Tenth Circuit held that the plaintiff was entitled only to monetary damages

because it was unlikely to be similarly injured in the future and could not allege an injury-in-fact to challenge the statute on its face. *See id.* at 1203.

In *F.E.R. v. Valdez*, cited in the relevant footnote in *Rasmussen*, the plaintiffs were a group of patients whose psychiatrist was investigated for Medicaid fraud and, as part of the investigation, their records were seized and made available to employees of the Utah Bureau of Medicaid Fraud, resulting in the action for declaratory, injunctive, and monetary relief. 58 F.3d 1530, 1532 (10th Cir. 1995). On the issue of mootness, the Tenth Circuit concluded that the claim for a declaratory judgment that their privacy rights were violated sought by the patients was similar to their claim for damages and not moot because a question still existed as to whether their privacy rights were violated by the defendants. *Id.* at 1533.

Acknowledging that the issue of mootness discussed in *F.E.R.* differs from the issue of standing implicated here, *see Duncan v. Governor of V.I.*, 48 F.4th 195, 204 (3d Cir. 2022) ("'Standing and mootness are "two distinct justiciability doctrines."' Standing looks to whether a live controversy exists '[a]t the start of litigation,' while mootness examines whether 'some development' occurred during the litigation such 'that there is no longer a live controversy.'" (alteration in original) (quoting *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 305, 306 (3d Cir. 2020))), Costello's assertion of standing contains at least two important defects. First, as recognized within the Third Circuit and this District, "'in the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant.' This is 'because [the purpose of] a declaratory judgment is to declare the rights of litigants' going forward." *Almeida v. Conforti*, Case No. 16–03411, 2017 WL 626746, at *6 (D.N.J. Feb. 14, 2017) (alteration in original) (quoting *Mollett v. Leicth*, 511 F. App'x 172, 174 (3d Cir. 2013) and then *Sherard v. Berks Cnty.*, 576 F. App'x 66, 69, 70 (3d Cir. 2014)) (discussing mootness and finding that a

declaration that the earlier denial of the plaintiff's handgun-permit application was unconstitutional would serve no meaningful purpose).

Costello is plainly seeking a "retrospective opinion that [she] was wrongfully harmed." (ECF No. 46 p.17 ("[A] retrospective declaratory judgement as to Cranford's abridgement of Costello's fundamental, 14th amendment rights, is warranted.")).   Such relief is contrary to the purpose of declaratory relief, which is to declare the rights and legal relations of parties pre-injury.   *See Ke*, 828 F. App'x at 102; *see also Lutter v. JNESO*, 86 F.4th 111, 129 (3d Cir. 2023) ("[T]o redress an injury-in-fact, a declaratory judgment must provide conclusive resolution of a concrete controversy related to a prospective course of action by one of the adverse parties.").

Second, even if I were to adopt the reasoning of *F.E.R.* and *Rasmussen*, their application here would not provide standing for the relief sought against Moving Defendants.   Costello is required to plausibly allege standing for each claim asserted and each form of relief sought.   *See Lutter*, 86 F.4th at 124 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)).

Taking her assertions to their logical endpoint, success on the merits for Costello would come by way of an order declaring that her parental rights were violated and that she is entitled to reimbursement of private tuition as a result. Such declaratory relief would necessarily be directed toward Cranford Defendants—not Moving Defendants—as the amended complaint clearly indicates that it is from Cranford Defendants that Costello seeks reimbursement and it is with that request for damages any declaratory relief would be intertwined.   (ECF No. 6 p.40.)   Costello's claims against Cranford Defendants are not before me at this juncture.

Additionally, it would be unnecessary and contrary to the principles of judicial restraint for me to grant relief from Cranford Defendants to Costello and then rule on the Guidance not implicated in the requested relief.   *See*

*Kajmowicz v. Whitaker*, 42 F.4th 138, 153, 154 (3d Cir. 2022) (recognizing that the principles of constitutional avoidance and judicial restraint "counsel courts to avoid deciding issues, especially constitutional ones, when they need not do so in order to resolve cases" (citing *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988))); Charles Alan Wright, *et al.*, 13 Fed. Prac. & Proc. Juris. § 3531.3 (3d ed. 2024) ("The simplest theoretical perspective on standing draws directly from our tradition that unnecessary judicial decisions should be avoided.").   Accordingly, I reject Costello's argument that requested declaratory relief tied to her pursuit of monetary damages from Cranford Defendants provides her with standing for claims asserted against and relief sought from Moving Defendants.   I will dismiss her claims against Moving Defendants, accordingly.[4]

### C.   Intervenor Plaintiff Maldonado

Lastly, Maldonado's assertion of standing differs from that of Short and Costello in that its focus is not on the potential social transition or related decisions and conversations of her children.   Rather, the intervenor complaint is premised on the Guidance's purported mandate that parents and students honor, recognize, and accept a student's asserted gender in violation of their right believe in a biblical view of gender. (ECF No. 56 pp. 11–16.)   This

---

[4] Moving Defendants, Short, and Costello do not reference Count 2 of the amended complaint, which alleges that the Guidance is *ultra vires* and exceeds the scope of the enabling statute (ECF No. 6 pp. 33–37).   Because I conclude that Short and Costello have failed to establish standing as to their claims and relief sought against Moving Defendants, I do not reach the merits of Short and Costello's *ultra vires* argument.   *See Am. Fed'n of Gov't Emps. Local 2018 v. Biden*, 598 F. Supp. 3d 241, 244–46 (E.D. Pa. 2022) (dismissing the plaintiffs' claims, among them that an executive order requiring executive-branch employees to be vaccinated against COVID-19 was an *ultra vires* act by the President, for lack of subject-matter jurisdiction, including lack of standing); *see also Brito v. Mukasey*, 521 F.3d 160, 168 (2d Cir. 2008) (concluding that the petitioner did not have standing to assert his *ultra vires* claim because "even if the regulations [the petitioner] attacks might allow for overreaching by the Attorney General, he has not yet been, nor is he likely to be, injured as a result of it.").

argument appears to be pulled from various passages from the Guidance that read: "[a] school district shall accept a student's asserted gender identity; parental consent is not required," "a student need not meet any threshold diagnosis or treatment requirements to have his or her gender identity recognized and respected by the district, school or school personnel," and "[s]chool districts shall honor and recognize a student's asserted gender identity, and shall not require any documentation or evidence in any form, including diagnosis, treatment, or legal name change."   (ECF No. 45–3 pp. 4, 5.)

Maldonado reads these provisions, directed toward school districts, schools, and related personnel, as imposing a mandated belief on students, "all school district participants," "all individuals," parents, and Maldonado herself. (ECF No. 56 pp. 9–11, 16, 17, 21, 23, 26.)   This broad reading goes beyond the general understanding within New Jersey courts that school districts are local governmental units.   *See N.J. Ass'n of Sch. Bus. Offs. v. Davy*, 978 A.2d 295, 305 (N.J. Super. Ct. App. Div. 2009); *see also Hewett v. Willingboro Bd. of Educ.*, 421 F. Supp. 2d 814, 818 (D.N.J. 2006) (recognizing that the definition of "political subdivision" under New Jersey law includes school districts); *Stubaus v. Whitman*, 770 A.2d 1222, 1228 (N.J. Super. Ct. App. Div. 2001) (noting that "school districts are 'creatures of the State'" (quoting *Borough of Glassboro v. Byrne*, 357 A.2d 65, 67 (N.J. Super. Ct. App. Div. 1976))); *Hamel v. State*, 728 A.2d 264, 268 (N.J. Super. Ct. App. Div. 1999) ("Public school boards are the governing bodies of school districts which are 'local government units' themselves." (quoting *Botkin v. Mayor and Borough Council of Borough of Westwood*, 145 A.2d 618, 623 (N.J. Super. Ct. App. Div. 1958))).

To the extent that Maldonado's focus is on the term "school," New Jersey courts have interpreted the ordinary meaning of "school" as referring to an institution as opposed to an entity or community that includes parents and

students.  *See N.J. Carpenters Apprentice Training and Educ. Fund v. Borough of Kenilworth*, 685 A.2d 1309, 1313 (N.J. 1996) ("'School,' as ordinarily used, has two meanings: a broad one, including all institutions of learning, or a more narrow one, including only primary and secondary schools." (collecting sources)); *Forstrom v. Byrne*, 775 A.2d 65, 72 (N.J. Super. Ct. App. Div. 2001) (discussing *N.J. Carpenters Apprentice Training and Educ. Fund*); *see also Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 710, 711 (3d Cir. 2020) (stating, in the context of interpreting an administrative regulation, that such interpretation "centers on the ordinary meaning of the text 'and the court must give it effect, as the court would any law.'" (quoting *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019))).

These readings of "school" and "school district" are consistent with the stated purpose of the Guidance, which is to assist school-district administrators in creating inclusive environments for transgender students and to ensure that all students receive equal opportunities.  (ECF No. 45–3 p.1.)  The first two paragraphs of the Guidance recognize that discrimination based on sex and/or gender identity is prohibited by both the NJLAD and Title IX.  (*Id.*)  The NJLAD prohibits discrimination on the basis of "sex [or] gender identity or expression" in a place of public accommodation, which includes primary, secondary, and high schools.  N.J.S.A. 10:5-5(l); N.J.S.A. 10:5-12(f)(1); *C.H. by D.H. v. Burlington Cnty. Inst. of Tech.*, Case No. A–0573–18T3, 2019 WL 6799772, at *7 (N.J. Super. Ct. App. Div. Dec. 13, 2019).  Similarly, Title IX prohibits "discrimination under any education program or activity receiving Federal financial assistance" on "the basis of sex."  20 U.S.C. § 1681(a).

The Guidance also appears to contemplate that parents and students will discuss and even disagree with the definition of gender identity and related considerations and issues.  For instance, the Guidance acknowledges that a student's transgender status may be disclosed by fellow students' conversations

at home. (ECF No. 45–3 p.4.) The Guidance also advises that a school's obligation to ensure that transgender students receive equal access to educational programs and activities continues "even in circumstances in which other students, parents, or community members raise objections or concerns." (*Id.* p.5.) Such advice would be unnecessary if students and parents were included in the provisions directed toward districts and expected to adopt the Guidance's definition of gender identity. Moving Defendants recognize this apparent disconnect between schools, school districts, parents, and students, stating in their motion brief that "[t]he Guidance makes recommendations directed to school districts on how to ensure a supportive and safe environment for transgender students; it leaves parents and students free to hold and express their own views about biological sex and gender identity, whether they hold religious or non-religious beliefs." (ECF No. 54–1 p.30.)

Upon a finding that Maldonado and her children are not among those who are advised to honor, recognize, or accept the Guidance's definition of gender identity or similar terms and provisions, her standing to assert her claims begins to unravel. *Comité de Apoyo a los Trabajadores Agrícolas v. Perez*, 148 F. Supp. 3d 361, 370 (D.N.J. 2015) ("If a plaintiff's injury is 'not tied to application of the challenged regulations,' he does not have standing to challenge those regulations." (quoting *Summers*, 555 U.S. at 495)); *see also Collura v. Maguire*, 569 F. App'x 114, 117 (3d Cir. 2014) (finding that the plaintiff did not have standing to challenge the alleged vagueness or overbreadth of rules of professional conduct because he was not a lawyer and thus the rules did not apply to him).

Standing is not precluded when a plaintiff is not the object of the challenged government action or inaction, "but it is ordinarily substantially more difficult to establish." *Sheller, P.C. v. U.S. Dep't of Health and Hum. Servs.*, 663 F. App'x 150, 155 (3d Cir. 2016) (quoting *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 562 (1992)).   Standing may be found when a challenged action "permits or authorizes third-party conduct that would otherwise be illegal in the absence of the Government's action" or "where the record presents substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and likelihood of redress."   *Id.* (quoting *Aichele*, 757 F.3d at 366).

The discussion in *Sheller* pertained to the traceability and redressability requirements for standing.   *Id.* at 154, 155.   However, Maldonado cannot satisfy standing because without the challenged provisions applying to her or her children, she has not alleged an injury attributable to the Guidance, rendering her injuries perceived rather than actual.   Standing cannot be satisfied by a plaintiff searching for an injury that is not there.   *See Greenberg v. Lehocky,* 81 F.4th 376, 388 (3d Cir. 2023) ("[A] plaintiff 'cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending.'" (second and third alterations in original) (quoting *Clapper*, 568 U.S. at 416) (rejecting the plaintiff's argument that the risk of disciplinary proceedings resulted in self-censorship)).   Simply put, whoever or whatever is advised to honor, recognize, and accept a student's gender identity and whatever effects that may have on that individual or entity, Maldonado is not among them.   *See Voneida v. Pennsylvania*, 508 F. App'x 152, 154, 155 (3d Cir. 2012) (finding that standing was not satisfied, in part, because the plaintiff "did not explain how he was injured or could be injured by the statutes governing the conduct of groups to which he does not belong").   The intervenor complaint's claims against Moving Defendants will therefore be dismissed.[5]

---

[5] Moving Defendants assert that Short, Costello, and Maldonado also lack standing to seek prospective relief against them specifically because the Guidance itself is not enforceable and their alleged injuries stem from the policies of the school districts rather than the Guidance itself.   (ECF No. 45–1 pp.29–33; ECF No. 54–1

## IV.  CONCLUSION

For the foregoing reasons, Moving Defendants' motions (ECF Nos. 45, 54) will be GRANTED and the amended complaint (ECF No. 6) and intervenor complaint (ECF No. 44) will be dismissed as to Moving Defendants for lack of standing.  Dismissal will be without prejudice.  *See Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 209 (3d Cir. 2021) ("[D]ismissal for lack of standing is generally without prejudice.  We have noted that '[b]ecause the absence of standing leaves the court without subject matter jurisdiction to reach a decision on the merits, dismissals "with prejudice" for lack of standing are generally improper.'" (second alteration in original) (quoting *Cottrell v. Alcon*

---

pp. 24–28.)  Short and Costello counter that standing may still be found when the third-party action is a predictable consequence of the Guidance—in this case, the district policies would not have been instituted but for the Guidance—and that the vast majority of school districts have adopted the Guidance and the Attorney General has cited the Guidance in challenging a separate school district's policy.  (ECF No. 46 pp. 18–23.)  Maldonado adds that the Cherry Hill Defendants' policy follows the Guidance verbatim and students are required to adhere to the district's policies.  (ECF No. 56 p. 14.)  I am persuaded by Moving Defendants' argument that the Guidance is unenforceable.  *See Greenberg*, 81 F.4th at 386–88 (concluding that the plaintiff failed to demonstrate a probability of enforcement and finding persuasive the defendants' disavowal of any enforcement of the plaintiff's planned conduct).  The Guidance does not appear to have any enforcement mechanism and Moving Defendants here similarly represent that they are unable to enforce the Guidance.  (ECF No. 45–1 p. 30; ECF No. 54–1 p. 25.)  I do not read the cited complaint by the New Jersey Attorney General's Office (ECF No. 1–9) as indication that the Guidance has binding import, but rather the Guidance is used as an example of a policy consistent with the NJLAD in a challenge against a policy allegedly violative of the NJLAD.  I am further unpersuaded by Short and Costello's citation of *The Pitt News v. Fisher*, in which an amendment to the Pennsylvania Liquor Code prohibited liquor advertisements in educational publications and the Third Circuit found that the plaintiff's injury was traceable to enforcement of the amendment and, in fact, the express goal of the amendment.  215 F.3d 354, 358–61 (3d Cir. 2000).  The facts in *The Pitt News* are distinguishable from the case at bar as the challenged government action included active enforcement of the amendment, including an advertiser being cited for placing a prohibited advertisement.  *Id.* at 359.  Therefore, while this opinion rests on general standing principles, I note that the Guidance's unenforceability offers alternative grounds for lack of standing.

*Lab'ys*, 874 F.3d 154, 164 n.7 (3d Cir. 2017))). An appropriate order accompanies this opinion.

_/s/ Edward S. Kiel_

**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated:  July 15, 2024